### R. B. CROMARTIE v. VIRGINIA-CAROLINA LUMBER COMPANY.

(Filed 4 April, 1917.)

**Deeds and Conveyances—Timber—Extension Period—Consideration—Waiver.**

Where a grantee conveys his standing timber, estimated at 3,000,000 feet, in consideration of $1.50 per thousand feet, to be cut and removed within a stated period, and the timber within the period has been ascertained as one-half of the quantity estimated, and agrees to an extension of the period upon consideration of payment of interest upon the original purchase price, but thereafter, in view of the shortage of the timber, fore-

goes the payment of the interest and gives his vendee bona fide to understand that he will not be required to pay it, which otherwise he would have done: *Held*, the vendor may not recover the value of the timber his vendee has cut during the time extended, and a judgment permitting a recovery of the interest is not to his prejudice.

CIVIL ACTION, tried before *Winston, J.*, at October Term, 1916, of BLADEN.

This is an action to recover the value of certain timber cut and removed from the land of the plaintiff by the defendant, heard upon exceptions to the report of a referee.

The facts, not excepted to, show that in 1907 plaintiff sold the timber and received $4,500 therefor. This consideration was based upon an estimated quantity of 3,000,000 feet at $1.50 per thousand, which was the then agreed value of the timber. This original deed carried a five-year right to cut and remove, but in 1910 plaintiff executed a deed extending the original period for three additional years, the consideration therefor being 5 per cent annually on the original purchase price. When the original period expired only one-third of the timber had been cut, but within the time limited in the extension deed the other two-thirds was cut and removed by defendant. The referee and court found that the two-thirds of all the timber which was cut after the expiration of the original period was 1,000,000 feet, and, therefore, the entire timber on the land when the original deed was made was necessarily only 1,500,000 feet.

Defendant admitted that it had not paid the extension money, but offered evidence to show that it offered to pay it, and would have paid it but for the fact that the plaintiff said he would not charge it; that he had already been paid for 3,000,000 feet; that defendant was going to lose and that he would not collect it.

The defendant offered the following evidence in support of this contention:

O. C. Benbow, officer of defendant, who conducted the negotiations with plaintiff, testified: "Prior to the expiration of the original period in 1912 I offered to pay the extension money more than once. Plaintiff said he was satisfied there was not going to be 3,000,000 feet there, and that I had paid enough, was going in the hole, and he was not going to exact it of me. At that time I was able and ready and willing to pay it. I would have paid it but for plaintiff's statement. I had cut only one-third of the timber, and would have been foolish not to offer it. . . . I talked with plaintiff as many as four times, and he always said he was not going to charge it; that he had been paid for the timber; was satisfied the timber would not cut 3,000,000 feet that was paid for, and would not require anything more."

F. J. Tyson, testified: "Plaintiff said he thought Benbow was doing all he could to get the timber off; that he had had a hard time over there, and he did not expect to charge any extension. . . . Just before I left, plaintiff asked what I would do if I was in his place in regard to charging extension. . . . At this last conversation plaintiff appeared to be undecided as to whether he would charge the extension money."

The plaintiff himself testified: "Tyson was in my store. . . . and I asked his advice as to what I ought to do. . . . I suppose that conversation was after the expiration of the original period, but I am not positive."

Upon this testimony his Honor found as a fact: "Defendant was led to believe, and did in good faith believe as the result of negotiations entered into between himself and plaintiff that plaintiff would not exact the extension money or require it to be paid; and had it not been for this honest and bona fide belief upon the part of said Benbow the extension money would have been duly paid by the defendant."

The court held that plaintiff could still collect the extension money, but that he could not, after leading defendant to believe that he would waive the extension money, treat it as a trespasser and sue for the value of the timber cut during the extension period. The court, therefore, entered judgment against defendant for the extension money due under the deed, to wit, $281.25 and interest, and plaintiff excepted and appealed.

*Bayard Clark for plaintiff.*
*T. C. Hoyle, and McIntyre, Lawrence & Proctor for defendant.*

PER CURIAM. The plaintiff sold his timber at the price of $1.50 per thousand feet and received therefor $4,500, the timber being estimated to be 3,000,000 feet.

It turns out, according to the report of the referee, that there were only 1,500,000 feet of the timber, and the plaintiff has therefore, been paid $2,250 more than the contract price.

In addition to this, he seeks to recover the value of the timber again upon the ground that as the timber was not cut within the first five-year period, and as the extension money was not paid or tendered at the time provided for in the extension deed, the timber belonged to him as owner of the land when it was cut and removed.

His Honor finds as a fact that the extension money was not paid or tendered because the defendant was led to believe by the conduct of the plaintiff that it would not be exacted, and denied relief to the plaintiff except as to the extension money, and in this there is no error of which the plaintiff can complain.

In 16 Cyc., 805, it is said: "While waiver is not in the proper sense of the term a species of estoppel, yet where a party to a transaction induces another to act upon the reasonable belief that he had waived *or will waive* certain rights, remedies, or objections which he is entitled to assert, he will be estopped to insist upon such rights, remedies, or objections to the prejudice of one misled"; and in *Lumber Co. v. Price,* 144 N. C., 54: "A right can only be forfeited by such conduct as would make it fraudulent and against conscience to assert it. If one acts in such a manner as intentionally to make another believe that he has no right, or has abandoned it, and the other, trusting to that belief, does an act which he would otherwise not have done, the fraudulent party will be restrained from asserting his right."

It is true, there is no consideration for the promise on the part of the plaintiff not to enforce payment of the extension money, and for this reason he can recover it as provided in the judgment; but he had the right, without consideration, to surrender his right of recovery to the defendant, and having led the defendant to believe he would not collect it, he cannot claim a forfeiture brought about by the failure of the defendant to pay or tender the extension money.

Affirmed.